IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ROBERT KIRBY, III,              )
                                )
            Plaintiff,          )
                                )
    v.                          )      1:23CV754
                                )
RICHARD JOYNER,                 )
et al.,                         )
                                )
            Defendants.         )
```

**MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge on Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Docket Entry 1) (the "Application"), filed in conjunction with his pro se Complaint (Docket Entry 2). For the reasons that follow, the undersigned will grant the Application for the limited purpose of recommending dismissal of this action.

**RELEVANT STANDARDS**

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its

problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A plaintiff "fails to state a claim on which relief may be granted," id., when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

---

[1] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th
(continued...)

2

## BACKGROUND

Asserting claims regarding a "Civil Rights Violation, Discrimination, [the] Unfair[,] Deceptive[,] [or] Abus[ive] Acts [or Practices of] S[ection] 1031 [of the Dodd-Frank Act], [and the] Federal Tort Claims Act" (the "FTCA") (Docket Entry 2 at 3),[2] Plaintiff initiated this action against Branch Manager Richard Joyner ("Defendant Joyner") and the State Employees Credit Union of North Carolina (individually, the "SECU," and collectively, the "Defendants") (id. at 2). According to the Complaint:

> [Plaintiff holds] the Power of Attorney [(the "POA")] for [his] mother A[.]S[.] who has dementia. . . . [The SECU] refuse[d] to [h]onor [Plaintiff's] POA. They have also gone out of the[ir] way with malice in the[ir] heart shutting down [Plaintiff's] mother[']s debit card. . . . [Plaintiff] went into the branch back in May 2023 to put [a] Dual Power of Attorney on file. [The SECU] kept [Plaintiff] in the bank for 2 h[ou]rs then t[old Plaintiff] they would get back with [him] and never did. [Plaintiff] went back into the branch in June 2023[.] After sitting for close to two hours, [the SECU] said they w[ould] get back with [him] and never did. [Plaintiff] went back into [the] branch in Mebane . . . [and t]his time [Plaintiff] took [his] mother with [him] so they could see her condition for themselves. After sitting down with them for about an[] hour [and] a

---

[1](...continued)
Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Off. of the Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

> half[,] [t]he branch m[anager Defendant] Joyner ask[ed Plaintiff] if [Plaintiff] could leave the room so he could have a conversation with [Plaintiff's] mother in private so he could find out how she wanted to proceed with her account[.]

(Id. at 6-7.) The Complaint requests "2.5 million [dollars] for [Defendants'] malice acts" (id. at 4) as well as "Economic Damages, Non[-]Economic Damages, Punitive Damages, [and] Compensatory Damages" (id. at 8).

## DISCUSSION

### I. Discrimination & Civil Rights Claims

To begin, the Complaint purports to state claims for "discrimination" and "civil rights violations." (Id. at 4.) However, no federal statutory authority exists for generalized claims of "discrimination" or "civil rights violations." Moreover, simply invoking the terms "discrimination" and "civil rights" does not suffice to state a viable claim. See, e.g., Iqbal 556 U.S. at 678 (observing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and that a viable complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). This aspect of the Complaint thus fails to state a claim for want of any factual matter suggesting discrimination or civil rights violations. (See Docket Entry 2 at 4-8.)

In addition, to the extent Plaintiff has asserted a federal constitutional deprivation actionable under 42 U.S.C. § 1983, he

4

must establish "that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Importantly, "the under-color-of-state-law element of [Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id. at 50 (internal quotation marks omitted).

Accordingly, "[t]he ultimate issue in determining whether a person is subject to suit under [Section] 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the State?" Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (internal quotation marks omitted). The acts of a private party qualify as "fairly attributable" to the State and arise under "color of state law" for Section 1983 purposes "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 294-95 (2001) (internal quotation marks omitted). Courts have "treated a nominally private entity as a state actor when it is controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in its management or control." Id. at 296 (citations, brackets, and internal quotation marks omitted).

5

Although organized under North Carolina law for the benefit of North Carolina residents, see N.C. Gen. Stat. § 54-109.2, "[the] SECU is a private entity, not a governmental one," Neal v. State Emps. Credit Union, No. 2:19cv44, 2020 WL 5524781, at *2 (E.D.N.C. Apr. 17, 2020), recommendation adopted, 2020 WL 2301468 (E.D.N.C. May 8, 2020).  Moreover, "[t]he mere fact that a private business is subject to extensive state regulation does not by itself convert its action into that of the State." Sullivan, 526 U.S. at 41; see also Monseque v. Moore, 4:18cv239, 2019 WL 1085188, at *2 (S.D. Ga. Mar. 7, 2019) (holding that private banks do not constitute state actors because neither "underwriting by the [federal government n]or timely responses to federal subpoenas make private banks state actors" (citation and internal quotation marks omitted)).  Further, simply "[p]roviding credit union services is not a traditional governmental function." Hauschild v. Nielsen, 325 F. Supp. 2d 995, 1004 (D. Neb. 2004).  Thus, the Complaint fails to satisfy the state action requirement of Section 1983.  See Murrell v. Pennsylvania State Emps. Credit Union, No. 1:20cv24, 2020 WL 6710212, at *3 (M.D. Penn. Nov. 16, 2020) (dismissing plaintiff's Section 1983 claim because "[b]anks, including state employee credit unions, are not state actors for [Section] 1983 purposes" (internal quotation marks omitted)).

6

Accordingly, the Court should dismiss Plaintiff's discrimination and civil rights claims for failure to state a viable claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Unfair and Deceptive Acts Claim

The Complaint alleges violations of the "Unfair, Deceptive, [or] Abus[ive] Acts [or] Practices" statute (the "UDAAP"). (Docket Entry 2 at 7.) Originating from Section 1031 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (and now codified at 12 U.S.C. § 5531), the UDAAP provides that:

> The Bureau may take any action authorized under [Section 5331(e)] to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service.

12 U.S.C. § 5531(a). This statute grants the Consumer Financial Protection Bureau (the "CFPB") enforcement power but does not create a private cause of action for individuals to enforce its protections. See id. "[I]f a statute does not expressly create a private cause of action, one does not exist." Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 805 (4th Cir. 1996).

Consistent with that understanding, "courts have commonly declined to read private causes of action into provisions of Dodd-Frank that do not explicitly provide for them." Beider v. Retrieval Masters Creditors Bureau, Inc., 146 F. Supp. 3d 465, 472 (E.D.N.Y. 2015); see also McCray v. Bank of Am., Corp., No.

7

14cv2446, 2017 WL 1315509, at *16 (D. Md. Apr. 10, 2017) (holding that "various courts have concluded that there is no private right action to enforce 12 U.S.C. §[] 5531."); Kalisz v. American Express Centurion Bank, No. 1:15cv1578, 2016 WL 1367169, at *2 (E.D. Va. Apr. 5, 2016) ("[Section 5531] does not provide a private right of action. Section 5564[] reserves litigation power to the [CFPB] to enforce any provision of Title 12."); Diaz v. Argon Agency Inc., No. 15cv451, 2015 WL 7737317 at *3 (D. Haw. Nov. 30, 2015) ("[T]here is no private right of action under [Section 5531], which merely outline[s] duties, authorities[,] and enforcement powers of the CFPB."). Given this absence of any private right of action, the Court should dismiss Plaintiff's UDAAP claims under Section 1915(e)(2)(B)(ii). See Maddox v. CitiFinancial Mortg. Co., No. 5:18cv41, 2018 WL 1547362, at *1 (W.D. Va. Mar. 29, 2018) (holding that plaintiff's "UDAAP claims must be dismissed for failure to state a claim" because "UDAAP [does not] provide a private cause of action").

### III. FTCA Claim

As to Plaintiff's FTCA claim, the FTCA applies only to "negligent or wrongful act[s] or omission[s] of any employee of the [Federal] Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Representing a limited congressional waiver of federal sovereign immunity for injury "caused by the negligent or wrongful act of a [Federal] Government

8

employee acting within the scope of his or her employment," the FTCA "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The Complaint alleges that Defendant Joyner serves as branch manager for the SECU. (See Docket Entry 2 at 2, 6-7.) As an employee of the SECU, a private entity, Defendant Joyner does not qualify as a federal employee. Because the Complaint does not seek relief based on the conduct of a federal employee (see id. at 4-8), the Court should dismiss Plaintiff's FTCA claim for failure to state a claim pursuant to Section 1915(e)(2)(B)(ii).

### IV. Potential State Claims

In light of the fatal deficiencies with the Complaint's federal claims and, as discussed below, the lack of diversity-of-citizenship jurisdiction, the Court should decline to entertain any of Plaintiff's state-law claims.

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution [and] laws . . . of the United States." 28 U.S.C. § 1331. Additionally,

> in any civil action of which the [federal] courts have original jurisdiction, the [federal] courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Nevertheless, a federal court "may decline to exercise supplemental

9

> jurisdiction over a claim," 28 U.S.C. § 1367(c), if it dismisses "all claims over which it has original jurisdiction.

28 U.S.C. § 1367(c)(3).

Given that, as discussed above, the Complaint fails to present a viable federal claim, the Court should decline to exercise supplemental jurisdiction over any state-law claims Plaintiff has presented. See Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that, pursuant to Section 1367(c)(3), "a [federal] court has discretion to dismiss or keep a case when it has dismissed all claims over which it has original jurisdiction," and that "[t]here are no situations wherein a federal court must retain jurisdiction over a state law claim, which would not by itself support jurisdiction" (emphasis omitted)). Finally, because the Complaint does not allege facts establishing diversity of citizenship (see Docket Entry 2 at 1-2 (listing North Carolina addresses for all parties), the Court lacks diversity jurisdiction over this action, see 28 U.S.C. § 1332(a) ("The [federal] district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between [] citizens of different [s]tates."); see also Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction.").

Under these circumstances, the Court should dismiss without prejudice any state-law claims in the Complaint under Section 1367(c)(3).

## CONCLUSION

The Complaint does not state a viable federal claim and any state-law claims should not proceed in this Court.

**IT IS THEREFORE ORDERED** that Plaintiff's Application (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that all federal claims in this action be dismissed pursuant to Section 1915(e)(2)(B)(ii), and all state-law claims in this action be dismissed without prejudice pursuant to Section 1367(c)(3).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 5, 2024

11

Case 1:23-cv-00754-UA-LPA   Document 6   Filed 02/05/24   Page 11 of 11